CASPER W. MARSELLUS a/k/a C. WEST MARSELLUS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marsellus v. Commissioner
Docket No. 4390-74.
United States Tax Court
T.C. Memo 1975-368; 1975 Tax Ct. Memo LEXIS 8; 34 T.C.M. (CCH) 1581; T.C.M. (RIA) 750368; December 24, 1975, Filed Richard B. Wallace, for the petitioner. USteedly Young, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654(a)
1960
$ 59.38
$ 29.69
$ 1961
1,392.33
696.17
32.94
1962
18,950.78
9,475.39
524.30
1963
22,915. 17
11,457.59
634.37
1964
2,870.36
1,435.18
73.09
1965
24,440.28
12,220.14
677.07
1966
37,749.80
18,874.90
1,0 45.64
1967
7,702.95
3,851.48
246.50
1968
36,490.33
18,245.17
1,167.68
1969
46,012.57
23,006.29
1,472.40
1970
27,320.78
13,660.39
874.27
As an alternative to the fraud penalty under section 6653(b), respondent has pleaded the additions to tax under sections 6651(a) and 6653(a). Concessions having been made, the only issues remaining for decision are whether petitioner's failure to file Federal income tax returns for the years 1960 through 1970 was fraudulent *10 with intent to evade taxes, and, if not, whether the additions to tax under sections 6651(a) and 6653(a) should be imposed. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Casper W. Marsellus resided at 40 East Tropical Way, Plantation, Florida, at the time he filed his petition in this proceeding. Petitioner was born in Passaic, New Jersey, on December 20, 1901. His formal education was terminated before he completed the eighth grade. Petitioner has had no training whatsoever in accounting or Federal tax law. Petitioner served in the United States Navy from 1918 to 1928, at which time he received an honorable discharge. Petitioner married his present wife, Eleanor Ganzhorn, on January 24, 1928. Petitioner and his wife have no children or other close relatives. In 1936, while under the influence of alcohol, petitioner married a second woman. He was charged with bigamy and, without the benefit of legal counsel, entered a plea of guilty. As a result, petitioner served three and one-half years in Sing Sing prison. Since 1940 and until recently petitioner *11 has been employed as a salesman. In 1959 petitioner became an independent sales representative for Package Machinery Company of East Longmeadow, Massachusetts. Under his employment contract, petitioner was exclusive agent in five southeastern states. Petitioner engaged in various forms of entertainment in the promotion of his business. Petitioner found that most of his customers enjoyed deep sea fishing. Prior to April 1966, he chartered boats to entertain them. After experiencing difficulty in chartering boats during the tourist season, petitioner purchased a used 34-foot Hatteras power boat, for which he paid $ 20,000 in cash. Until early 1974 approximately 30 to 40 percent of petitioner's use of the boat was for business purposes. In May 1970 petitioner traded in his 1968 Cadillac on a new 1970 Lincoln Continental valued at $ 8,385.05, and paid the balance due in cash. Petitioner never filed a Federal income tax return until 1971 when he was contacted by the Internal Revenue Service. Petitioner had negligible income prior to 1940. From approximately 1941 until 1959 petitioner's salary was subject to the withholding tax. Petitioner initially believed that such tax was sufficient *12 to satisfy his entire income tax liability, and that he was not required to file income tax returns. Despite the fact that sometime before 1959 petitioner discovered that he was required to file annual tax returns, he did not file delinquent returns for the prior years for fear that such filing would result in the disclosure of his criminal record and the loss of his job. Petitioner failed to file returns in subsequent years, including the taxable years 1960 through 1970, because of the fear that he would be prosecuted and punished for his failure to file in earlier years which would ultimately result in the loss of his job. Knowing that banks report to the Federal government the interest paid to owners of savings accounts, petitioner deliberately maintained only noninterest bearing checking accounts during the period 1960 through 1970 for the specific purpose of preventing the government from discovering his existence as an earner of taxable interest income and avoiding punishment. Petitioner had gross income from commissions earned from Package Machinery during the years 1960 through 1970 as set forth in Column A of the table below; these commissions were available to him as earned *13 at all times without restriction. He received payments by check from Package Machinery for the commissions earned in the total yearly amounts as set forth in Column B of the table below; he had year-end credit balances in his commissions payable account with Package Machinery during the years 1960 through 1970 as set forth in Column C of the table below. For each of the years 1960 through 1970, he received, prior to the respective filing dates for the Federal income tax returns, Forms 1099 from Package Machinery showing commissions paid for the respective years as set forth in Column D below. A
B
C
D
Total Payments
Credit Balance
Gross income
Received From
In Commissions
From
Package Machinery
Payable Account
Amount Shown
Year
Commissions
By Check
At Year End
On Forms 1099
1960
$ 9,532.58
$ 9,532.58
0
$ 9,532.58
1961
26,276.08
14,651.58
$ 11,624.50
14,651.58
1962
39,458.69
48,542.25
2,540.94
48,542.25
1963
49,770.38
26,038.08
26,273.24
26,038.08
1964
19,688.90 31,200.00
14,762.14
33,260.00
1965
62,682.63
42,377.20
35,067.57
42,377.20
1966
84,730.94
86,516.60
32,489.91 86,516.60
1967
32,640.33
34,882.75
31,039.49
34,882.75
1968
79,290.05
30,606.90
79,722.64
31,400.00
1969
94,376.88
103,800.00
70,299.52
103,800.00
1970
72,545.69
53,800.00
89,045.21
53,800.00
Totals
$ 570,993.15
$ 481,947.94
$ 484,801.04
*14 Petitioner had taxable income in the years 1960 through 1970 as set forth in Column A of the table below and is liable for income tax (including self-employment tax), at separate return rates, for the years 1960 through 1970 as set forth in Column B of the table below; and, if he and his wife had filed joint returns for each of the years 1960 through 1970, they would have been liable for income tax (including self-employment tax) as set forth in Column C of the table below. A
B
C
Tax at joint
Tax including
Rates Including
Taxable
Self-employment
Self Employment
Year
Income
Tax
Tax
1960
$ (485.42)
$ 59.38
$ 59.38
1961
16,918.08
5,875.04
4,448.14
1962
29,445.69
13,101.93
9,425.07
1963
40,130.38
20,089.16
14,852.21
1964
10,738.90
2,870.36
2,382.84
1965
53,765.63
24,440.28
18,245.78
1966
73,914.94
37,749.8 0
29,423.40
1967
22,501.09
7,702.95
5,602.75
1968
67,564.65
36,490.33
28,781.68
1969
79,320.54
46,012.57
36,669.15
1970
55,708.63
27,320.78
21,064.41
Totals
$ 450,008.53
$ 221,712.58
$ 170,954.81
On December 31, 1970 petitioner had the following assets, among others: Liquid Assets: Plantation First National Bank Checking Account
$ 25,933.48
Pompano Beach Bank & Trust Co. Checking Account
10,634.00
First National Bank in Palm Beach Checking Account
24,386.07
Note from Jay A. Wray
1,000.00
Note from Raymond Collins
50,000.00
Accrued Commissions
89,045.21
Total Liquid Assets
$ 200,998.76
Other Assets: House (at cost)
$ 35,500.00
Automobile (at cost)
8,385.05
Boat (at cost)
20,000.00
Total Other Assets
$ 63,885.05
Total Assets as listed
$ 264,883.81
*15 Petitioner was indicted for violation of section 7203, Internal Revenue Code of 1954, [2] based on his alleged willful failure to file Federal income tax returns for each of said years. He pleaded guilty to the count for 1969, and the remaining counts were dismissed upon motion of the United States Attorney. Petitioner was sentenced to one year imprisonment and two years unsupervised probation (the execution of the prison sentence being suspended) and fined $ 10,000. *16 ULTIMATE FINDING OF FACT Petitioner's failure to file Federal income tax returns for the years 1960 through 1970 was fraudulent with the intent to evade taxes. OPINION The issues for decision are whether petitioner's failure to file Federal income tax returns for the years 1960 through 1970 was due to fraud, and, if not, whether the additions to tax under sections 6651(a) and 6653(a) should be imposed. The issue of fraud is one of fact to be determined upon a consideration of the entire record. William G. Stratton,54 T.C. 255 (1970). The burden of proving fraud under section 6653(b) [3] is placed upon respondent by section 7454. Respondent must satisfy this burden by clear and convincing evidence. Anson Beaver,55 T.C. 85 (1970); Rule 142, Tax Court Rules of Practice and Procedure.However, the requisite quantum of proof may be provided by circumstantial evidence. *17 The addition to tax for fraud may be imposed when a taxpayer has willfully attempted to evade tax by a willful failure to file returns, as well as when he has filed intentionally false returns. Although willful failure to file a timely return does not by itself establish liability for additions to tax for fraud, it is persuasive evidence of fraudulent intent. Stoltzfus v. United States,398 F.2d 1002 (3d Cir. 1968), affg. 264 F.Supp. 824 (D.C. Pa. 1967); Anson Beaver,supra.
There is a division of opinion among the courts of appeal as to what respondent must show, in addition to willful failure to file, in order to prove the requisite fraudulent intent. In Spies v. United States,317 U.S. 492, 498 (1943), the Supreme Court enunciated the so-called "affirmative action test," requiring an independent act of misrepresentation or concealment, in distinguishing the misdemeanor of willful failure to file from the felony of attempted tax evasion. The Fifth Circuit, the Court of Appeals to which an appeal of our decision herein would lie, has adopted this test in civil fraud cases. Jones v. Commissioner,259 F.2d 300 (5th Cir. 1958), *18 revg. 25 T.C. 1100 (1956). Although we have not specifically rejected the Spies test for use in civil fraud cases, we have expressed approval of the approach followed in Powell v. Granquist,252 F.2d 56 (9th Cir. 1958), affg. 146 F.Supp. 308 (D. Ore. 1956). Anson Beaver,supra. The Ninth Circuit simply considered the taxpayer's failure to file along with other relevant facts in determining whether there was fraudulent intent to evade taxes. In any case, we are bound in this instance to abide by the views of the Fifth Circuit by our decision in Jack E. Golsen,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). To justify the failure to file for the many years involved, petitioner testified that he was fearful that filing would result in criminal prosecution for his failure to file in earlier years which ultimately would cause him to lose his job. Petitioner argues that this factor, plus his retention of earnings records and substantial liquid assets, verify his statement that he intended to eventually file delinquent tax returns *19 and pay the taxes owing for the years in question. We disagree. The reason given for his failure to file returns was an admission that he did not file in order to conceal previous years of nonfiling which in itself is evidence of fraudulent intent. Fred N. Acker,26 T.C. 107 (1956). Furthermore, petitioner admitted that he placed funds in checking accounts rather than savings accounts for the purpose of preventing the government from discovering his existence as an income earner. Such concealment clearly constitutes the type of affirmative action required by the Fifth Circuit for the imposition of the fraud penalty. Petitioner's self-serving testimony and his retention of substantial liquid assets and earnings records, when considered in light of his lifelong pattern of nonfiling and his attempts to conceal, convince us that he intended to pay his taxes only if his scheme was uncovered. Upon a careful consideration of the record and based upon the foregoing, we find that petitioner's failure to file Federal income tax returns for the years 1960 through 1970 was due to fraud with intent to evade tax. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 7203. WILLFUL FAILURE TO FILE RETURN, SUPPLY INFORMATION, OR PAY TAX. Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $ 10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.↩
3. SEC. 6653. FAILURE TO PAY TAX. (b) FRAUD.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩