GLADYS E. BOLDEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bolden v. Commissioner
Docket No. 2125-77.
United States Tax Court
T.C. Memo 1978-294; 1978 Tax Ct. Memo LEXIS 218; 37 T.C.M. (CCH) 1232; T.C.M. (RIA) 78294; July 31, 1978, Filed Gladys E. Bolden, pro se. W. Robert Abramitis, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Addition to Tax Year
Deficiency
[1] Sec. 6653 (b) 1972
$ 342.28
$ 171.14
1973
2,163.96
1,081.98
1974
3,077.47
1,538.74
1975
664.23
522.12
*219 One concession has been made by the respondent. The issues remaining for decision are: 1. Whether petitioner understated her taxable income for the years 1972 through 1975; 2. Whether petitioner rendered services as an independent contractor during the years 1972 through 1975, thereby subjecting her net earnings to self-employment tax; and 3. Whether any part of the underpayment of income tax for each of the years 1972 through 1975 was due to fraud with intent to evade tax. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. In addition, the facts contained in respondent's request for admissions filed December 15, 1977, are deemed admitted and are included herein. Gladys E. Bolden (petitioner) was a legal resident of Riviera Beach, Florida, when she filed her petition in this case. Petitioner filed delinquent Federal income tax returns for the years 1972 and 1973 with an agent of the Internal Revenue Service on April 13, 1976. She did not file a Federal income tax return for the year 1974. Her return for the year 1975 was timely filed with the Internal Revenue Service Center at Chamblee, Georgia. Petitioner reported *220 gross income on her Federal income tax returns as follows: Year
Amount
1972
$ 1,917.00
1973
386.00
1975
4,886.00
Petitioner is a high school graduate. She completed about two years of college training to become a nurse. During the years 1972 through 1975 the petitioner was a nurse's aide. She was employed by the Medical Personnel Pool of Palm Beach, Florida, and during part of 1975 by Viola J. Eassa of West Palm Beach. Petitioner's arrangement with the Medical Personnel Pool was that it would contact her and indicate where she should report for work. The patient would pay the Medical Personnel Pool directly and it in turn would pay petitioner an hourly wage. From 1972 to 1975 the petitioner performed nursing services for N. J. Mirsky, the husband of Sadye M. Mirsky. In 1972 the petitioner received 13 checks, totaling $ 1,617, from Sadye M. Mirsky as compensation for her services. In 1973 she received 54 checks, totaling $ 9,137, from Mrs. Mirsky for services rendered. In 1974 she received 56 checks, totaling $ 12,379, from returns for such years. 9 checks, totaling $ 2,408, from Mrs. Mirsky for services rendered. None of the payments made by Mrs. *221 Mirsky were reported on petitioner's Federal income tax returns for such years. In 1974 the petitioner received taxable income of $ 96 as compensation for services rendered to Mr. and Mrs. William Heller. This amount was not reported by petitioner for Federal income tax purposes. Also in 1974 the petitioner received wages of $ 44 from the Medical Personnel Pool which was not reported on any tax return. On April 13, 1976, the petitioner met with a tax auditor of the Internal Revenue Service in response to a letter requesting her to appear for an audit. She knew prior to that time that she should have filed Federal income tax returns for the years 1972, 1973, and 1974. She had asked Warren Barnes, a friend of Ruben Finley, a tax return preparer, if Mr. Finley would prepare her Federal income tax returns for those years. Petitioner met with Mr. Finley in his office and told him she needed returns prepared. She informed Mr. Finley that she worked for the Medical Personnel Pool during 1972 and 1973. She did not tell him where else she worked. She did not tell him she had worked for Mrs. Mirsky or the Hellers. The tax returns were prepared from Wage and Tax Statements (Treasury *222 Form W-2) supplied by petitioner. When petitioner appeared for her audit with the Internal Revenue Service she brought with her delinquent 1972 and 1973 tax returns, a 1974 Wage and Tax Statement (Form W-2), and a 1975 tax return. She told the auditor that she did not have a return for 1974 because she had not made enough money in that year to be required to file a return. Petitioner provided a written statement to that effect, and to support the assertion she showed the tax auditor the W-2 form showing approximately $ 44 in cncome for 1974. The auditor asked petitioner if she had rendered services to anyone other than the Medical Personnel Pool during each of the taxable years in issue. Petitioner replied in the negative. The auditor also asked petitioner whether or not she maintained a checking or savings account for the years 1972 through 1975. Petitioner stated that she had a checking or savings account but that it was closed out prior to 1972. From December 12, 1972 until May 29, 1975, petitioner maintained checking account number XX-786-5 at the First American Bank of North Palm Beach, Florida, in the name of "Gladys Bolden." On December 19, 1972, petitioner opened *223 a savings account at the First American Bank of North Palm Beach. This account was maintained in the names of "Gladys Bolden and Walter Barnes, Jr." It remained open as of April 14, 1976. During each of the years 1972, 1973, 1974, and 1975, the petitioner cashed or deposited checks received from Sadye M. Mirsky at the First American Bank of North Palm Beach. On August 19, 1976, petitioner again met with the tax auditor of the Internal Revenue Service. At that meeting, after being confronted with the fact that the Internal Revenue Service had discovered the checking or savings accounts and that the deposits indicated she was receiving compensation for services, petitioner admitted that she had earned income from sources other than the Medical Personnel Pool during the years in issue. ULTIMATE FINDINGS OF FACT 1. Petitioner had unreported taxable income as follows: Year
Amount
1972
$ 1,617.00
1973
9,137.00
1974
12,519.00
1975
2,408.00
2.Petitioner rendered nursing services from 1972 through 1975 as an independent contractor. 3. Part of the underpayment of income tax for each of the years 1972 through 1975 was due to the petitioner's fraud with *224 intent to evade tax. Issue 1. Unreported Income.
It is clear that the petitioner received unreported income for nursing services rendered during each of the years in issue in the amounts set forth in our ultimate findings of fact. Compensation for services is includable in gross income under section 61(a)(1) of the Code. The evidence is undisputed. We therefore sustain respondent's determinations of taxable income. Issue 2. Independent Contractor.
In his notice of deficiency respondent determined that the petitioner was an independent contractor, rather than employee, during the years 1972 through 1975 and was liable for the self-employment tax on her net earnings. Petitioner failed to introduce any evidence on the pertinent factors to be considered in deciding the existence of either an employer-employee or independent contractor relationship. We have no information as to the type and nature of the services petitioner performed, who exercised control over her work, and whether or not she was "licensed." Rev. Rul. 61-196, 1961-2 C.B. 155. Petitioner bears the *225 burden of proof on this issue and she has failed to carry that burden. Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent's determination is presumptively correct, and we sustain it on this record. Issue 3. Fraud
The principal issue in this case is whether any part of the underpayment of taxes for each of the years 1972 through 1975 was due to fraud with intent to evade tax within the meaning of section 6653(b). Respondent bears the burden of establishing fraud, and he must prove it by clear and convicing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Levinson v. United States,496 F. 2d 651 (3d Cir. 1974), cert. denied 419 U.S. 1040 (1974); Estate of Pittard v. Commissioner,69 T.C. 391 (1977); Estate of Temple v. Commissioner,67 T.C. 143 (1976); Imburgia v. Commissioner,22 T.C. 1002 (1954); Petit v. Commissioner,10 T.C. 1253 (1948). To establish fraud respondent must show that the petitioner intended to evade taxes, which *226 she knew or believed she owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner,394 F. 2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F. 2d 56, 60 (9th Cir. 1958); Acker v. Commissioner,26 T.C. 107, 112-113 (1956). The presence or absence of fraud is a factual question to be determined by an examination of the entire record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Since fraud can seldom be established by direct proof of intention, the taxpayer's entire course of conduct is often relied on to establish circumstantially such fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,supra at 105-106. Based on the entire *227 record, the evidence clearly establishes that petitioner fraudulently underpaid her taxes during the years in issue. She arranged for the preparation of her tax returns by Mr. Finley, and those returns substantially understated her income from nursing services for each of the years. Such a consistent pattern of underreporting substantial amounts of income over a period of several years, standing alone, is persuasive evidence of fraud. Holland v. United States, 348 U.S. Court, cert. denied 397 U.S. 962 (1970); 66 (6th Cir. 1970), affg. a Memorandum Opinion of this Court; Estate of Upshaw v. Commissioner,416 F. 2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court, cert. denied 397 U.S. 962 (1970).y Agnellino v. Commissioner,302 F. 2d 797, 801 (3d Cir. 1962), affg. on this issue a Memorandum Opinion of this Court; Shahadi v. Commissioner,266 F. 2d 495, 500-501 (3d Cir. 1959), affg. 29 T.C. 1157 (1958); Schwarzkopf v. Commissioner,246 F. 2d 731, 734 (3d Cir. 1957), *228 affg. a Memorandum Opinion of this Court; Harper v. Commissioner,54 T.C. 1121, 1139 (1970). In addition to the consistent and substantial understatements of income from 1972 through 1975, there are other indicia of fraud present in this case. Petitioner's failure to file timely returns for the years 1972, 1973, and 1974 was willful. This is supported by the fact that when petitioner was initially contacted by the Internal Revenue Service for audit she knew she should have been filing returns for those years and took immediate steps to have her returns, albeit false returns, prepared by Mr. Finley. It is well established that the addition to tax for fraud may be imposed where there has been a willful attempt to evade tax by means of a willful failure to file returns as well as by filing intentionally false returns. Such a willful attempt to evade tax may be found from any conduct calculated to mislead or conceal. Beaver v. Commissioner,55 T.C. 85, 92 (1970). *229 The so-called "affirmative action test" was enunciated in Spies v. United States,317 U.S. 492, 498 (1943), in connection with criminal fraud cases. The Court of Appeals for the Fifth Circuit, to which an appeal from a decision in this case would lie, has adopted the same test in civil fraud cases. Jones v. Commissioner,259 F. 2d 300 (5th Cir. 1958); Marsellus v. Commissioner,544 F. 2d 883 (5th Cir. 1977), affg. T.C. Memo. 1975-368. Although we have never adopted the Spies test for use in civil fraud cases, we have expressed approval of the approach followed in Powell v. Granquist,252 F. 2d 56 (9th Cir. 1958), affg. 146 F. Supp. 308 (D. Ore. 1956). See Beaver v. Commissioner,supra at 93. The Ninth Circuit simply considered the taxpayer's failure to file along with other relevant facts in determining whether there was fraudulent intent to evade taxes. In any case, we will follow here the views of the Fifth Circuit. Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). *230 Here there is affirmative evidence of attempts by petitioner to mislead and conceal. At the time of her first interview with the Internal Revenue Service auditor the petitioner presented false returns for 1972, 1973, and 1975, and erroneously stated that she had not earned enough income to be required to file a return for 1974. She also misled the auditor into believing that she only worked for the Medical Personnel Pool and Miss Eassa from whom she had received Wage and Tax Statements. Yet petitioner was well aware of the fact that she earned most of her income in the years 1972 through 1974 by rendering services for Mrs. Sadye Mirsky. Petitioner also failed to tell the truth about the existence of her checking and savings accounts and her other sources of income. The fact that petitioner knew the returns submitted substantially understated her income is further evidenced by her statements made at the second conference held on August 19, 1976. When confronted with a statement from the Internal Revenue Service auditor that at least one bank account had been discovered in her name and it appeared that she had received additional unreported compensation for services, petitioner *231 stated, "Well, if you have investigated me already, tell me how much I owe." This is an apt example of the evasive conduct this Court has frequently called "an important indicium of fraud." Jedinak v. Commissioner,T.C. Memo. 1978-227. Obviously the petitioner made false statements to the auditor in an attempt to mislead and to conceal her income. This is clear evidence of fraud. United States v. Newman,468 F. 2d 791, 794 (5th Cir. 1972), cert. denied 411 U.S. 905 (1973). Accordingly, we hold on this record that the petitioner is liable for the additions to tax under section 6653(b) with respect to the deficiencies for the years in issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩