H. BYRON GAAR, JR., and MONETTE GAAR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RespondentGaar v. CommissionerDocket No. 8339-79.United States Tax CourtT.C. Memo 1981-696; 1981 Tax Ct. Memo LEXIS 50; 43 T.C.M. (CCH) 29; T.C.M. (RIA) 81696; December 7, 1981. *50 Held, since H and W did not appear at trial and offered no evidence, the Commissioner's motion to dismiss for lack of prosecution is granted; therefore, H and W are liable for the deficiencies determined by the Commissioner, W for the additions to tax under secs. 6651(a) and 6653(a), I.R.C. 1954, and H for the additions to tax under sec. 6654, I.R.C. 1954. Held, further, the facts and evidence deemed admitted and the testimony at trial were sufficient to carry the Commissioner's burden of proving fraud on the part of H; therefore, H is liable for additions to tax under sec. 6653(b), I.R.C. 1954. H. Byron Gaar, Jr., pro se. David W. Johnson, for the respondent. SIMPSONMEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following*52 deficiencies in, and additions to, the petitioners' Federal income taxes: Sec. 6651(a)PetitionerYearDeficiencyI.R.C. 1954 1H. Byron Gaar,1964$ 590.00Jr.1965547.001966667.001967803.9619681,440.7819693,791.5019703,485.5419712,895.4019721,324.0019732,855.0019745,124.00Monette Gaar1972438.00$ 110.0019731,991.00498.0019744,081.001,020.00Additions to TaxSec. 6653(a)Sec. 6653(b)Sec. 6654PetitionerI.R.C. 1954I.R.C. 1954I.R.C. 1954H. Byron Gaar,$ 295.00$ 16.52Jr.273.5015.32333.5018.68401.9825.73720.3944.891,895.75118.961,742.77111.541,447.7092.65662.0042.381,428.0091.372,562.00163.97Monette Gaar$ 21.9099.55204.05The issue for decision is whether the Commissioner has carried his burden of proving that any part of the underpayments of tax by petitioner H. Byron Jr., was due to fraud within the meaning of section*53 6653(b). FINDINGS OF FACT Most of the facts were deemed admitted as a result of our granting of a motion made by the Commissioner under Rule 91(f), Tax Court Rules of Practice and Procedure.2The petitioners, H. Byron Gaar, Jr., and Monette Gaar, husband and wife, resided in Hargill, Tex., at the time they filed their petition in this case. During each of the years in issue, 1964 through 1974, Mr. Gaar was employed as a pilot, principally as a corp duster, by various corporations, companies, and individuals. During such years, Mr. Gaar received at least the following amounts of compensation for his services: YearIncomeEmployer1964$ 4,283.53Brown Flying Service, Charleston, Miss.1965$ 151.48Brown Flying Service, Charleston, Miss.4,104.82Hidalgo Flying Service, Edcouch, Tex.$ 4,256.301966$ 4,972.94Hidalgo Flying Service, Edcouch, Tex.1967$ 5,227.78Hidalgo Flying Service, Edcouch, Tex.390.23C-Level Farms & Aviation Service, Palacios, Tex.$ 5,618.011968$ 7,941.03Hidalgo Flying Service, Edcouch, Tex.1969$ 6,774.74Cooner Air Service, Tunica, Miss.2,994.49Barnett Flying Service, Hargill, Tex.5,044.16Dave's Air Service, Inc., Crowley, La.$ 14,813.391970$ 7,488.68Cooner Air Service, Tunica, Miss.2,837.16Dave's Air Service, Inc., Crowley, La.2,400.21Farm Aerial Service, Inc., Edcouch, Tex.1,983.75Dale Carter, Tunica, Miss.$ 14,709.801971$ 9,751.71Cooner Air Service, Tunica, Miss.3,854.95A.B. Leonard Aviation Co., Inc., Jennings,La.$ 13,606.661972$ 8,156.32Cooner Air Service, Tunica, Miss.197322,080.00C.B.C. Flying Service, Weslaco, Tex.197434,225.00C.B.C. Flying Service, Weslaco, Tex.*54 In addition, Mr. Gaar was employed as a crop duster in Nicaragua during parts of 1965 and 1967, in Oklahoma during parts of 1966, 1967, 1968, and 1969, and in Louisiana during a part of 1969. Also, since 1963, Mr. Gaar has been employed from time to time as a charter pilot. Mr. Gaar has never reported his income from such sources and has refused to furnish the Commissioner with the amount of such income. Mr. Gaar received from the following employers copies of at least the following Forms W-2 (wage and earnings statement) prior to the due date for filing a Federal income tax return for each of the years covered by such Forms W-2: YearEmployerGross Income1966Hidalgo Flying Service$ 4,972.941969Cooner Air Service6,774.741970Cooner Air Service7,488.681971Cooner Air Service9,751.711971A.B. Leonard Aviation Co., Inc.3,854.951972Cooner Air Service8,156.32Mr. Gaar knew his correct social security number was 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. Nevertheless, during 1969, 1970, and 1971, he willfully and intentionally supplied one of his employers, Cooner Air Service, with the false social security number of 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. Such false number was used*55 on Forms W-2 reporting Mr. Gaar's earnings from Cooner Air Service. In April 1971, Mr. Gaar executed and submitted to another of his employers, A. B. Leonard Aviation Company, Inc., a Form W-4 (Employee's Withholding Allowance Certificate), with the jurat deleted, on which he wrote "Make no Deductions," thereby instructing his employer not to withhold income tax from his compensation. On such Form W-4, Mr. Gaar willfully and intentionally used the false social security number of 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. "Drivers Unlimited" was an unincorporated nominee used by Mr. Gaar. In June 1967, Mr. Gaar instructed his employer, Hidalgo Flying Service, to have his paychecks made payable to Drivers Unlimited. Thereafter, during 1967 and 1968, all compensation paid by Hidalgo Flying Service to Mr. Gaar was paid by checks made payable to Drivers Unlimited. Such checks were delivered to, and endorsed by, Mr. Gaar. In June 1967, Mr. Gaar opened a bank account in the name of Drivers Unlimited. He was the only person authorized to draw on such account. Until such account was closed in April 1968, it was used to deposit and cash checks that Mr. Gaar received as compensation from Hidalgo Flying Service. *56 During 1973 and 1974, Mr. Gaar again used the nominee Drivers Unlimited. During such years, he was manager of C.B.C. Flying Service, and he wrote and cashed checks on such company's bank account made payable to Drivers Unlimited, which checks were compensation for Mr. Gaar's services. Since 1963, Mr. Gaar has paid no Federal income taxes. He did not file Federal income tax returns for 1964 through 1974. For 1965 through 1974, he submitted to the Internal Revenue Service Forms 1040 on which he refused to report his gross income and tax liabilities, relying principally on the Fifth Amendment to the U.S. Constitution in support of such refusal. In 1973, a criminal information was filed against Mr. Gaar charging him with violating the provisions of section 7203 for the years 1967 through 1971. In 1975, after a trial on the merits, Mr. Gaar was found guilty of such charge. United States v. Gaar, Criminal No. 73 B 394 (S.D.Tex.), affd. in an unpub. opinion, No. 75-4281 (5th Cir., July 14, 1976). The judgment in that case is final. The district court, at Mr. Gaar's request, made special findings of fact pursuant to Rule 23(c), Federal Rules of Criminal Procedure. Among*57 such findings were that Mr. Gaar had organized Drivers Unlimited as a means to defraud the Government and that the formation and use of Drivers Unlimited showed willfulness in his failure to file Federal income tax returns. In 1964, Mr. Gaar pled guilty to an information charging him with violating sections 5601(a)(1) and (7), 5604(a)(1) and (2), 5222, and 7206(4), for the operation of an illegal whiskey still and for intent to evade or defeat the assessment or collection of Federal excise taxes. Mr. Gaar did not report the income he received from the operation of such still, and he has continued to refuse to furnish the Commissioner with such information. During the course of their examination of Mr. Gaar, agents of the Commissioner repeatedly requested Mr. Gaar to furnish to them the books and records of his incomeproducing activities for 1964 through 1974. Mr. Gaar refused to comply with such requests, and his refusals continued even after he had been convicted of violating section 7203. In October 1977, an administrative summons was served on Mr. Gaar to produce for examination his books and records for 1972 through 1975. Mr. Gaar did not comply with such summons. All*58 of the evidence of Mr. Gaar's income was obtained from third-party sources without the cooperation of Mr. Gaar. In April 1972, Mr. Gaar caused to be prepared and mailed a letter addressed to the agent then investigating his tax liability. Such letter treatened that, if such agent continued his investigation, the persons cooperating with such agent, primarily Mr. Gaar's past employers, could "possibly be held for conspiracy." Also, the agents investigating Mr. Gaar were able to determine that in 1972 he had been employed by Clyde B. Colvin. Mr. Colvin admitted employing Mr. Gaar during 1972, but he was unable to locate his records of such employment. Mr. Gaar was present during such conversation, but he refused to disclose the amount of income he had received from Mr. Colvin. The Commissioner issued a notice of deficiency to the petitioners in which he determined the deficiencies in their Federal income taxes, determined that Mrs. Gaar was liable for the additions to tax under section 6651(a) for delinquency and section 6653(a) for negligence, and determined that Mr. Gaar was liable for the additions to tax under section 6653(b) for fraud and section 6654 for failure to pay*59 estimated income taxes. OPINION At trial, no appearance was made by or on behalf of the petitioners, and counsel for the Commissioner moved pursuant to Rule 123(b) to dismiss the case for lack of prosecution as to the deficiencies in income taxes and the additions to tax under sections 6651(a), 6653(a), and 6654. Rule 123(b) provides: (b) Dismissal: For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which he has the burden of proof; and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule. The petitioners have the burden of disproving the Commissioner's determination of deficiencies in income taxes. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Likewise, *60 the petitioners have the burden of proving that the Commissioner's determination of additions to tax under sections 6651(a), 6653(a), and 6654 was erroneous. Bixby v. Commissioner, 58 T.C. 757 (1972); Estate of Ruben v. Commissioner, 33 T.C. 1071 (1960); O'Donohue v. Commissioner, 33 T.C. 698 (1960). Since the petitioners did not appear at trial and offered no evidence, it is clear that we can properly and should enter an order dismissing their case for lack of prosecution with respect to the deficiencies in income taxes and additions to tax under sections 6651(a), 6653(a) and 6654. Freedson v. Commissioner, 565 F. 2d 954 (5th Cir. 1978), affg. 67 T.C. 931 (1977). 3The only issue remaining for decision is whether to sustain the Commissioner's determination os fraud with respect to Mr. Gaar. The Commissioner has the burden of proving fraud by clear and convincing evidence. Rule 142(b); sec. 7454(a); Miller v. Commissioner, 51 T.C. 915, 918 (1969).*61 Usually, the Commissioner seeks to meet his burden at a trial where the facts are established by testimony of witnesses and the introduction of documentary evidence. However, in a number of cases, the Commissioner has sought to carry, and has carried, his burden by relying on facts deemed admitted in accordance with the Rules of this Court. See Doncaster v. Commissioner, 77 T.C. 334 (1981); Gilday v. Commissioner, 62 T.C. 260 (1974); Strachan v. Commissioner, 48 T.C. 335 (1967). Here, the Commissioner relies primarily on the facts and evidence deemed admitted under Rule 91(f) and also on the testimony of two agents of the IRS and supporting documentary evidence introduced at trial. In order to prove fraud, the Commissioner must show that Mr. Gaar intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F. 2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F. 2d 366, 377 (5th Cir. 1968),*62 affg. a Memorandum Opinion of this Court; Acker v. Commissioner, 26 T.C. 107, 112-113 (1956). The presence or absence of fraud is a factual question to be determined by an examination of the entire record. Mensik v. Commissioner, 328 F. 2d 147, 150 (7th Cir. 1964), Affg. 37 T.C. 703 (1962); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Since fraud can seldom be established by direct proof of intention, the petitioner's entire course of conduct can often be relied on to establish circumstantially such fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. In our judgment, there is no question but that the Commissioner has carried his burden of proving fraud by clear and convincing evidence for each of the years in issue. With respect to 1967 through 1971, Mr. Gaar is collaterally estopped, by virtue of his criminal conviction under section 7203, from denying that he willfully failed to file returns for such years. Lefknowitz v. Tomlinson, 334 F. 2d 262 (5th Cir. 1964);*63 Strachan v. Commissioner, supra; Amos v. Commissioner, 43 T.C. 50 (1964), affd. 360 F. 2d 358 (4th Cir. 1965). Mr. Gaar did not file a return for 1964. With respect to 1965 and 1966 and 1972 through 1974, he filed Forms 1040 on which he refused to report any income of tax liability, relying principally on the Fifth Amendment in support of such refusal. A Form 1040 which does not disclose any information as to a taxpayer's income and deductions does not constitute a valid return within the meaning of section 6012. United States v. Porth, 426 F. 2d 519, 523 (10th Cir. 1970); Corp v. Commissioner, 65 T.C. 68, 79-80 (1975), affd. in an unpub. opinion 559 F. 2d 1207 (3d Cir. 1977). Even if a particular question might be incrimminating, Mr. Gaar's refusal to answer all questions relating to his income or expenses was unjustified. If a particular question called for an answer that he considered privileged*64 under the Fifth Amendment, he might raise an objection to answering that question; but he could not, on such account, refuse to make any return at all. United States v. Sullivan, 274 U.S. 259 (1927); United States v. Daly, 481 F. 2d 28 (8th Cir. 1973); Cupp v. Commissioner, 65 T.C. at 80. The forms which Mr. Gaar filed for 1965 and 1966 and for 1972 through 1974 were virtunally identical to the forms which he filed for 1967 through 1971. For 1967 through 1971, the district court found that he willfully failed to file returns. For each of the other years in issue, Mr. Gaar had sufficient income to require to filing of a return, and he was aware of his obligation to file such returns. The record fails to disclose any discernible difference between Mr. Gaar's conduct in 1964, 1965, 1966, 1972, 1973, and 1974 and his conduct in 1967 through 1971; thus, it is clear that his failure to file returns for each of such years was willful. While willful failure to file a timely return, without more, does not establish fraud within the meaning*65 of section 6653(b), such failure may be considered in connection with other facts in determining whether any deficiency or underpayment of tax is due to fraud. Stoltzfus v. United States, supra; Beaver v. Commissioner, 55 T.C. 85, 93 (1970). In this case, there is an abundance of additional evidence showing that Mr. Gaar also fraudulently failed to report his true income and fraudulently underpaid his taxes. Such additional evidence includes Mr. Gaar's use of a nominee, Drivers Unlimited, during 1973 and 1974 and earlier years; the district court found that the use of such nominee for the earlier years was done with the fraudulent intent of concealing his income and misleading the Commissioner. See Beaver v. Commissioner, supra., Meyers v. Commissioner, 21 T.C. 331 (1953); Hecht v. Commissioner, 16 T.C. 981 (1951). His use of false social security numbers is further evidence of an intent to conceal his true income. 4What is more, throughout the course of the Commissioner's investigation of Mr. Gaar, He*66 totally failed to cooperate with the Commissioner's agents and attempted to impede such investigation. Such conduct tends to indicate an effort to conceal the true facts concerning his income and is another important indicium of fraud. Powell v. Granquist, 252 F. 2d 56, 60-61 (9th Cir. 1958); Estate of Beck v. Commissioner, 56 T.C. 297, 365 (1971); Stone v. Commissioner, 56 T.C. at 224; Beaver v. Commissioner, 55 T.C. at 93; Vise v. Commissioner, 31 T.C. 220, 226 (1958), affd. 278 F. 2d 642 (6th Cir. 1960). In summary, the record shows that during the years in issue, Mr. Gaar was aware of his obligation to file valid returns and pay his tax liability. His failure to file valid returns and his failure to pay any portion of his tax liability for such years, coupled with his attempts to conceal his income and mislead the Commissioner, leave no doubt that he is liable for the additions to tax for fraud as determined by the Commissioner. In view of such holding, we need not address the Commissioner's*67 alternative argument that Mr. Gaar is liable for additions to tax under section 6651(a) for delinquency and section 6653(a) for negligence. See sec. 6653(b) and (d). An appropriate order will be issued and decision will be entered for the respondent. Footnotes1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩2. All references to a Rule are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩3. See McFarlin v. Commissioner, T.C. Memo. 1981-563↩.4. See Dante v. Commissioner, T.C. Memo. 1978-126↩.