ELLIS E. ADAMS AND VEANNA R. ADAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adams v. Commissioner
Docket No. 6942-78.
United States Tax Court
T.C. Memo 1979-305; 1979 Tax Ct. Memo LEXIS 223; 38 T.C.M. (CCH) 1187; T.C.M. (RIA) 79305; August 9, 1979, Filed Richard G. Goldman and Wesley J. Lynes, for respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Randolph F. Caldwell, Jr., for hearing and disposition of respondent's motion for judgment on the pleadings pursuant to section 7456(c), Internal Revenue Code of 1954, as amended. The Court agrees with and adopts his opinion which is set forth below. OPINION OF SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: This case is presently before the Court on respondent's motion for judgment on the pleadings. Respondent determined deficiencies in petitioners' *224 Federal income taxes, and additions to tax for fraud under section 6653(b) of the Internal Revenue Code of 1954 against petitioner Ellis E. Adams (hereinafter Ellis) only, for years and amounts, as follows: Additions
Years
Deficiencies
to Tax
1971
$8,244.44
$4,122.22
1972
5,601.40
2,800.70
1973
13,019.64
6,509.82
The issues which must be decided in determining whether respondent is entitled to prevail on his motion are: (1) Whether petitioners are liable for deficiencies in tax; and (2) whether any part of any underpayment of tax for any of the years is due to Ellis' fraud. After the filing by Ellis of an informal petition on June 20, 1978, and in response to the Court's order of June 23, 1978, petitioners by their counsel filed an amended petition on July 5, 1978, which was served upon respondent on July 13, 1978. Respondent thereafter on September 12, 1978, filed his answer to the amended petition, wherein there were included affirmative allegations in support of his imposition of the additions to tax for fraud. The answer had been directly served by respondent's counsel on petitioners' counsel on September 8, 1978. *225 Under Rule 37(a) of the Tax Court Rules of Practice and Procedure, petitioners had until October 23, 1978, to file a reply to respondent's answer or until October 8, 1978, to move with respect to the answer. They did neither. Accordingly, on December 5, 1978, respondent timely filed under Rule 37(c) a "Motion for Entry of Order That Undenied Allegations in Answer Be Deemed Admitted." A copy of that motion, together with the Court's notice calendaring the same for hearing on January 10, 1979, was served on petitioners' counsel on December 7, 1978. The notice contained the following provision: If, however, a proper reply as required by Rule 37(a) and (b) of the Court's Rules, is filed by Petitioners on or before December 21, 1978, that motion will be denied, but if a reply is not so filed the Court will act upon the motion in its own discretion on the hearing date. Respondent's motion under Rule 37(c) came on for hearing on January 10, 1979. There was no appearance by or on behalf of petitioners, nor had petitioners filed a reply to respondent's answer or any response to said motion. In those circumstances the Court granted respondent's motion; and its order so granting was *226 served on petitioners' counsel on January 18, 1979. Respondent filed his motion for judgment on the pleadings, as mentioned above, on May 15, 1979, which was noticed for hearing on July 11, 1979. On the hearing date, there was no appearance by or on behalf of petitioners, nor had they filed any response to the motion. Respondent appeared by his counsel who made oral argument in support of the motion. At the conclusion of the hearing the motion was taken under advisement. The following findings of fact are based on those portions of the amended petition admitted by respondent in his answer thereto and upon the portions of that answer which have been deemed to be admitted by virtue of the Court's order dated January 10, 1979. FINDINGS OF FACT Petitioners, husband and wife, have their legal residence in Sevierville, Tennessee. During the taxable years 1971, 1972, and 1973, petitioners resided in Greensboro, North Carolina, where Ellis was a minister of the Brightwood Baptist Church (hereinafter, the Church). Ellis received income from his employment as a minister, as well as from diverting money and other property of the Church to his own purpose and use. Such money *227 and property consisted of Church bonds, donations to the Church's Young Peoples Recreation Fund, donations to the Brightwood Hour Radio Broadcast, donations to the Church's Bus Ministry, money deposited in the Church's Building Fund, and donations to the Brightwood Christian Academy, and those were used by Ellis to purchase, for his own use, airplanes, automobiles, and real property as well as to pay Ellis' personal living expenses. For the taxable years involved, Ellis did not maintain adequate and accurate books of account and other records which reflect or disclose his correct taxable income from the Church as salary or otherwise as required by the Internal Revenue Code of 1954 and the regulations promulgated thereunder. Respondent determined petitioners' correct taxable income for the taxable years involved on the basis of the net worth plus expenditure method. On December 31 of each of the years 1970 through 1973, Ellis owned assets having an aggregate cost basis to him in each of said years in the amounts shown in the following table: Year
Cost Basis at December 31
1970 $ 40,883.83
1971
123,652.21
1972
142,178.26
1973
165,230.27
Petitioners, *228 on December 31, 1970, did not own, possess, or have on hand, any receipts, accumulations, funds, or assets which had a cost basis to them in an aggregate amount in excess of $40,883.83. On December 31 of each of the years 1970 through 1973 Ellis had liabilities in aggregate, consisting of loans and mortgages and depreciation allowed or allowable in the amounts shown in the following table: Year
Liability at December 31
1970
$ 13,686.15
1971
56,108.01
1972
63,084.58
1973
67,392.84
The net worth of petitioners on December 31 of each of the years 1970 through 1973, and the increase in net worth of petitioners during each of said years, were as follows: Year
Net Worth at
Increase in Net
December 31
Worth During Year
1970
$27,197.68
1971
67,544.20
$ 40,346.52
1972
79,093.68
11,549.48
1973
97,837.43
18,743.75 *
Petitioners, during the taxable years 1971, 1972, and 1973, incurred adjustments to net worth arising from nondeductible personal living expenses, nondeductible losses on trade of automobiles, non-taxable home allowance, and non-taxable portions of long-term *229 capital gains, in the following net amounts: Year
Amount of Adjustment
1971
$ 12,187.52
1972
28,676.69
1973
43,305.51
Petitioners, during the taxable years 1971, 1972, and 1973, did not borrow or receive from any nontaxable sources, any funds or other assets not already taken into account by respondent, which would cause or account for the increase in net worth hereinabove set forth. The increases in petitioners' net worth plus the adjustments, all as set forth hereinabove, represent petitioners' adjusted gross income for each of the taxable years 1971, 1972, and 1973 as shown in the following table: Year
Adjusted Gross Income
1971
$ 52,534.04
1972
40,226.17
1973
62,049.26 *
Petitioners' correct adjusted gross income, the adjusted gross income reported on their returns, and the resulting understatement of their adjusted gross income for each of the taxable years 1971, 1972, and 1973 were as follows: Correct
Reported
Year
AGI
AGI
Understatement of AGI
1971
$52,534.04
$15,813.00
$36,721.04
1972
40,226.17
11,430.52
28,795.65
1973
62,049.26 *
11,695.97
50,353.29#
*230 Petitioners, for the taxable years 1971, 1972, and 1973, were entitled to subtract exemptions from adjusted gross income as follows: Year
Amount
1971
$4,725
1972
5,250
1973
5,250
Petitioners, for the taxable years 1971, 1972, and 1973, were entitled to subtract from adjusted gross income deductions in the following amounts as claimed, adjusted by respondent, and allowed: Year
Claimed
Adjustment
Allowed
1971
$ 11,253.58
($3,628.03)
$ 7,625.55
1972
9,983.09
1,081.61
11,064.70
1973
11,168.04
899.33
12,067.37
The resulting amounts of petitioners' correct taxable income, the taxable income reported on their returns, and the consequent understatement of their taxable income for each of the taxable years 1971, 1972, and 1973 were: Correct
Reported
Understatement
Year
TI
TI
of TI
1971
$ 40,183.49
( $ 165.58)
$ 40,349.07
1972
23,911.47
( 3,802.57)
27,714.04
1973
44,731.89 *
( 4,722.07)
49,453.96#
*231 Petitioners' correct tax liability, the tax liability reported on their returns, and the resultant understatement of their tax liability for each of the taxable years involved, were: Correct
Reported
Understatement
Year
Liability
Liability
of Liability
1971
$ 8,808.44
$564.00
$ 8,244.44
1972
6,150.21
548.81
5,601.40
1973
13,872.84 *
864.00
13,008.84 #
For 1973, Ellis concealed from his return preparer substantial income in the form of the funds and other property belonging to the Church which Ellis had diverted to his own personal use. Ellis also concealed from respondent's agents, during their examination of petitioners' returns for th taxable years involved, the existence of two of his automobiles. During the taxable years involved, petitioners' personal living expenses exceeded $80,000, and their net worth increased in excess of $70,000. During that same period, petitioners reported on their returns total adjusted gross income of $38,939.49 and total taxable income of ($8,690.21). On June 21, 1976, Ellis pleaded guilty *232 to an indictment charging him with willful evasion of income tax for 1971, under section 7201, and was convicted and sentenced to imprisonment. United States of America v. Ellis E. Adams, No. CR-76-98-9 (M.D., N.C.) OPINION Rule 120, which is patterned after Rule 12 of the Federal Rules of Civil Procedure, provides that after the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings. In the Note of this Court's Rules Committee to accompany Rule 120, it is stated: This motion is not to be made until the pleadings are closed. It is appropriate only when the pleadings do not raise a genuine issue of material fact, but rather involve only issue of law. The motion is to be granted only if, on the admitted facts, the moving party is entitled to a decision. Based on the extensive facts admitted through operation of the Rule 37(c) procedure invoked by the respondent in this case, it is believed that there are no genuine issues of material fact and that, on the admitted facts, respondent is entitled to a decision in his favor for the determined deficiencies and the additions *233 to tax under section 6653(b), each of which for 1973 has been lowered slightly by respondent in his motion for judgment on the pleadings from the amounts in the statutory notice for that year, in order to correct slight mathematical errors in the computation in that notice. 1. The deficiencies.--In the notice of deficiency respondent determined petitioners' income, in the absence of adequate and accurate books and records, through use of the net worth plus expenditures method. He also made adjustments to petitioners' claimed deductions for medical expenses (partial disallowance for each year), for taxes (in petitioners' favor for each year), for contributions (in petitioners' favor for 1971, but partially disallowing for 1972 and 1973), for interest (in petitioners' favor for each year), and for miscellaneous deductions for 1971 (total disallowance). In their amended petition, petitioners assigned error to the total adjustments in taxable income, to the deficiencies in income tax, and to the additions to tax. Therein, petitioners assigned no specific error to the adjustments pertaining to the deduction of medical expense, taxes, contributions, interest, and miscellaneous deductions; *234 however, they did assign general error to respondent's computations. The facts standing admitted, and included in the findings above, establish all the elements entering into the computation of income through the net worth plus nondeductible expenditures method. Further the admitted facts establish the deductions and exemptions to which petitioners are entitled to each year. And, finally, those admitted facts establish petitioners' correct income tax liability for each year. It follows that respondent is entitled to a decision in his favor for the full amount of the determined deficiency for each of the years 1971 and 1972, and for a deficiency of $13,008.84 for 1973. 2. Additions to tax for fraud.--Respondent has determined that only the husband-petitioner, Ellis Adams, is liable for additions to tax for fraud for each of the years. Section 6653(b) provides that if any part of any underpayment (which, as defined by section 6653(c), is the equivalent of a deficiency) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The burden of proving fraud is upon the respondent, and it must *235 be proved by clear and convincing evidence. Usually that burden is met by respondent at the trial where the facts are established by testimony of witnesses or the introduction of documentary evidence. In a number of cases, however, the necessary facts have been established through the pleadings of the parties, motions filed, and orders entered with respect thereto. In the present case material affirmative allegations in respondent's answer with respect to the fraud issue have been deemed admitted by the petitioners by virtue of the Court's order dated January 10, 1979. Accordingly, respondent's burden of going forward to prove those factual allegations has been discharged. Morris v. Commissioner,30 T.C. 928 (1958); Black v. Commissioner,19 T.C. 474 (1952). This Court's Rules of Practice and Procedure (effective January 1, 1974) have not changed this principle. See Gilday v. Commissioner,62 T.C. 260 (1974). The question comes down to whether the admitted facts clearly and convincingly show that a part, if not all, of the underpayments of tax in this case are due to fraud. At the very outset, Ellis' entry of a guilty plea *236 to the indictment charging him with the felony of willfully attempting to evade or defeat tax for 1971, under section 7201, conclusively establishes his liability for the addition to tax for fraud for that year. Arctic Ice Cream Co. v. Commissioner,43 T.C. 68, 74-76 (1964). See also Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). Accordingly, respondent is entitled to a decision in his favor for the full amount of the determined addition to tax for fraud for 1971. Turning to the years 1972 and 1973, it should initially be pointed out that paragraph 7 (r), set out in the findings of fact, alleges that there have been understatements of taxable income by petitioners in the amounts of $40,349.07, $27,714.04, and $49,453.96, for the taxable years 1971, 1972, and 1973, respectively.Pursuant to the Court's order of January 10, 1979, that allegation was deemed to be admitted and it is now established as fact by the process of this Court. This Court and others have recognized the principle that a pattern of consistent and substantial understatements of taxable income is highly persuasive and strong evidence *237 of fraud. See Adler v. Commissioner,422 F.2d 63, 66 (6th Cir. 1970); Vise v. Commissioner,31 T.C. 220, 226-227 (1958), affd. 278 F.2d 642 (6th Cir. 1960); Kurnick v. Commissioner,232 F.2d 678, 681 (6th Cir. 1956), affirming T.C. Memo. 1955-31; and Rogers v. Commissioner,111 F.2d 987 (6th Cir. 1940). This Court noted in Farber v. Commissioner,43 T.C. 407, 419 (1965), modified, approved, and readopted 44 T.C. 408 (1965), that such evidence, even by itself, was regarded by the Court of Appeals in Kurnick,supra, as sufficient to satisfy the burden of proving fraud by clear and convincing evidence. As to what might be considered "consistent" or "substantial," the Court of Appeals in Rogers,supra, at p. 989, stated: Fraud cannot be lightly inferred, but must be established by clear and convincing proof. Duffin v. Lucas, 6 Cir., 55 F.2d 786. It is conceivable that taxpayers may make minor errors in their tax returns, or, owing to different or contradictory theories of tax computation, calculate returns *238 which differ greatly in result from the Commissioner's assessments. Here petitioners do not have that excuse. Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly evidence an intent to defraud the Government. The Board did not err in deciding that 50% penalties should be assessed. The understatements of taxable income, mentioned above, are quite substantial and are consistent for the three-year period here involved. Consequently, those understatements are clearly indicative of something much more than "mere" omissions of income and manifestly satisfy the standards of the above-cited cases. When the understatements are considered in the light of the wrongful diversions by Ellis of the Church's funds and other property which he appropriated to his own personal use and purposes, his concealment of such funds and property from his return preparer for 1973, his concealment of the existence of two of his automobiles from respondent's representatives when they were examining his returns for the years involved, and the sizeable amounts of his living expenses and increases in net worth as compared to the taxable income *239 being reported, there can be no doubt that the underpayments for 1972 and 1973 (as well as 1971) were due to fraud on Ellis' part. Accordingly, respondent is entitled to a decision in his favor for the determined addition to tax for fraud for 1972, and for an addition to tax for fraud of $6,504.42 for 1973. An appropriate order and decision will be entered.
Footnotes
*. Shown as $18,773.75 in the notice of deficiency.↩
*. Shown as $62,079.26 in the notice of deficiency.↩
*. Shown as $62,079.26 in the notice of deficiency. # Shown as $50,383.29 in the notice of deficiency.↩
*. Shown as $44,761.89 in the notice of deficiency. # Shown as $49,483.96 in the notice of deficiency.↩
*. Shown as $13,883.64 in the notice of deficiency. # Shown as $13,019.64 in the notice of deficiency.↩